NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DAMARIS GARCIA HERNANDEZ, on behalf of N.R.R., a minor,**

        **Plaintiff,**

**-vs-**

                **Case No. 6:17-cv-1172-Orl-18KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT JUDGE:**

    This cause came on for consideration without oral argument on the Complaint filed by Damaris Garcia Hernandez, on behalf of N.R.R., seeking review of the final decision of the Commissioner of Social Security denying the claim for social security disability benefits for N.R.R. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. No. 13, 15. Counsel filed a Joint Memorandum,[1] Doc. No. 17.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 16. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## Procedural History.

N.R.R. was born in 2004. R. 220. Hernandez alleged that N.R.R. became disabled on July 1, 2012. *Id*.

After the application was denied originally and on reconsideration, Hernandez asked for a hearing before an Administrative Law Judge ("ALJ"). R. 146. An ALJ held a hearing on March 24, 2016. NRR and Hernandez, accompanied by a representative, attended the hearing, and Hernandez testified. R. 64-90.

After considering all of the evidence, the ALJ issued a decision. R. 42-58. The ALJ found that N.R.R. had not engaged in substantial gainful activity since August 6, 2013, the date his application was filed. He concluded that N.R.R. had the following severe impairments: attention deficit hyperactivity discover ("ADHD"); a mood disorder; a psychotic disorder; and a mathematic disorder. These impairments did not functionally equal an impairment listed in the SSA regulations. R. 45.

The ALJ next considered whether N.R.R.'s impairments were functionally equivalent to any listed impairment under six domains of functioning, which are as follows: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.[2] R. 45-58. The ALJ found that N.R.R. had no limitation in the domains of moving about and manipulating objects, and health and physical well-being. The ALJ found that N.R.R. had a marked limitation in the domain of attending and completing tasks. The ALJ found that N.R.R.

---

[2]  20 C.F.R. § 416.926a(b)(1).

had less than marked limitations in the remaining domains. R. 51-58. Because N.R.R. did not have an extreme limitation in any domain or marked limitations in two domains, the ALJ concluded that N.R.R. was not disabled. R. 58. In reaching this decision, the ALJ gave little weight to the opinions of Samuel S. McClure, M.D., a psychiatrist. R. 50-51. The ALJ also found that statements about the degree of N.R.R.'s functional limitations were not entirely consistent with the evidence in the record. R. 47.

Hernandez requested review of the ALJ's decision by the Appeals Council and submitted new evidence. R. 10-25, 34-35. On April 20, 2017, the Appeals Council found no basis to review the ALJ's decision. R. 1-4.

Hernandez seeks review of the Commissioner's final decision by this Court.

### Jurisdiction and Standard of Review.

Hernandez, on behalf of N.R.R., has exhausted all administrative remedies. Therefore, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### Statement of Facts.

After a thorough review of the record, I find that the facts in the record are adequately summarized in the ALJ's decision and in the Joint Memorandum. Accordingly, I adopt those facts by reference without restating them in full to protect N.R.R.'s privacy to the extent possible.

3

At the time of the ALJ's hearing, N.R.R. was eleven years old and in the fifth grade. R. 68, 78. During the ALJ's hearing, Hernandez testified that N.R.R. sometimes had bad anxiety during which he would bite and chew on himself. R. 68. When depressed, he would cry and talk about dying. R. 86. He also became violent. He sometimes would throw objects, punch a fence and curse. R. 69-70. He also made threats to hurt others. R. 70. N.R.R. had not been in any physical fights at school. R. 72. N.R.R. had not used sharp items against other people, but he once hit someone with a stick. R. 71. He had also thrown a cat around, and he once killed a cat. R. 82-83.

Hernandez had meetings at school and phone conferences with teachers regarding N.R.R., but N.R.R. had not been suspended from school. Teachers told her that N.R.R. was not focusing, paying attention or following directions and that he could not stay still. R. 72. N.R.R. did not argue with his teachers. His grades were fair. R. 73. Hernandez had to sit with N.R.R. every day to make sure he completed his homework. R. 74. N.R.R. advanced normally through the grades at school. R. 74-75.

Hernandez testified that N.R.R. did not have any problems moving around. He did not have speech problems. He had two neighborhood friends and one friend at school. R. 75-76.

Hernandez had to remind N.R.R. to care for his personal hygiene. R. 78. N.R.R. was able to make a sandwich for himself. R. 78-79. He had problems concentrating around loud noises. R. 83-84. He told Hernandez that he saw shadows walking. R. 85. N.R.R. liked to stay in his room by himself at home. R. 79. N.R.R. did not like anyone to touch him or his belongings. R. 83. Medication helped somewhat. R. 81.

The records reflect that N.R.R. was treated by Dr. McClure at Devereux Florida Treatment Network for a number of months until he transitioned to Laila Burgos, ARNP. R. 327-28. N.R.R. had his first visit with ARNP Burgos on October 3, 2011. He had difficulty paying attention, sitting still and getting his work done. Hernandez reported to ARNP Burgos that N.R.R. was impulsive at home and had difficulty going to sleep. ARNP Burgos treated N.R.R. with medication. R. 374. In November, 2011, Hernandez reported that N.R.R. said he was hearing voices. ARNP Burgos noted that N.R.R.'s mood was euthymic and he had a full affect. R. 373. The December 2011 treatment note reflects that N.R.R. was doing well in school although misbehaving occasionally. R. 372.

In January 2012, ARNP Burgos noted that N.R.R. was not doing well at school. R. 371. As of February, however, N.R.R. had improved on medication. R. 370. As of April 2012, N.R.R. was doing well in terms of behavior at school, but he had difficulty grasping subject matter. R. 368.

On May 18, 2012, Kristen Young, Ed.S., a school psychologist, prepared a psychoeducational report. Dr. Young opined, after testing, that N.R.R.'s cognitive ability fell with the upper limits of the Average Range (73rd percentile). His reading, writing, and oral language skills fell in the low range, and his math skills and performance fell within the lower limits of the average range. R. 316-26.

In June 2012, Hernandez reported to ARNP Burgos that N.R.R. was hyperactive and angry with cursing. N.R.R. was having difficulty sleeping. ARNP Burgos observed that N.R.R. was very hyperactive, but his mood was euthymic and he had a full affect. She continued to treat N.R.R. with medication. R. 366. The July 2012 treatment note reflects that N.R.R. was more calm on

5

medication. Hernandez reported that N.R.R. had poor socialization skills. R. 365. In August 2012, Hernandez reported that N.R.R. had been difficult but, overall, he was behaving well. R. 364. In October 2012, N.R.R. had run out of medication and had been misbehaving. Nevertheless, he had a euthymic mood and a full affect. R. 362. In December 2012, Hernandez reported that N.R.R. continued to struggle in school and he had issues with impulsivity. R. 360.

On January 1, 2013, Dr. McClure examined N.R.R. It was reported that N.R.R. had marked emotional lability, was attention seeking, heard voices, had aggressive behaviors including violence and threats of self-injurious behavior, and conflicts with others. During the mental status examination, Dr. McClure noted that N.R.R. was alert and attention seeking. His affect was inappropriate. He was overly defensive and somewhat paranoid. He admitted to hallucinations. His insight and judgment were minimal. His mood was labile. His intelligence was average. Dr. McClure's diagnoses including ADHD, a psychotic disorder NOS and a mood disorder NOS with a current global assessment of functioning ("GAF") score of 38. Dr. McClure adjusted N.R.R.'s medication. R. 327-28.

N.R.R. returned to Dr. McClure in February 2013. Dr. McClure wrote that N.R.R. was doing adequately, but then indicated marked emotional liability, difficulty with anger, frustration and hostility, psychotic symptomatology and violent tendencies. His GAF score remained at 38. R. 354. The May 2013 treatment note reflects that N.R.R. was hyperactive, impulsive, restless, and had difficulty concentrating. The diagnoses were psychosis NOS and ADHD. Dr. McClure adjusted N.R.R.'s medication. R. 352. In June 2013, N.R.R. was reported to be doing adequately. R. 351. Later treatment notes from 2013 also reflect that N.R.R. was doing adequately. R. 390-91.

On September 5, 2013, Tania Quinones indicated that N.R.R. was low to average in reading, math and written language. He was in regular education cases. Quinones wrote, "Student has made great growth. Student has a 504 accommodation plan to address his difficulties with attention." R. 257-58.

On September 26, 2013, Eve Carrington, Ed.S., a licensed school psychologist, evaluated N.R.R. for a learning disability. Dr. Carrington determined, after interviews and testing, that N.R.R.'s intellectual ability was in the average range with a Full Scale IQ of 92. His reading and broad written language skills were in the low average range, and his math skills were in the very low range. She opined that N.R.R. had a mathematics disorder. R. 376-79.

Also in September 2013, Mrs. Moreno, N.R.R.'s second and third grade teacher, prepared a teacher questionnaire. The questionnaire had five grading levels: no problem; a slight problem; an obvious problem; a serious problem; and a very serious problem. In the domain of acquiring and using information, Mrs. Moreno opined that N.R.R. had an obvious problem in understanding school and content vocabulary; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem solving skills in class discussions. She wrote, "Needs constant repetition of multi-step task[;] easily distracted so I refocus his attention back on task to use the information." R. 329-36. In the domain of attending and completing tasks, Mrs. Moreno opined that N.R.R. had a serious problem in carrying out multi-step instructions and working at reasonable pace/finishing on time. He had an obvious problem in focusing long enough to finish an assigned activity or task; refocusing to task when necessary; carrying out single-step instructions; and working without distracting self or others. R. 331. He had no obvious or more serious problems in the other domains. R. 332-34.

NOT FOR PUBLICATION

On October 3, 2013, Mercedes DeCubas, Ph.D., prepared a mental functional capacity assessment based on a review of the record. Dr. DeCubas opined that N.R.R. had attention deficit hyperactivity disorder, combined type, disruptive; a psychotic disorder; and a mood disorder. These impairments would result in marked limitations in the domain of attending and completing tasks, less than marked limitations in the domains of acquiring and using information and interacting and relating with others, and no limitations in the remaining domains. R. 94-99. On March 3, 2014, Jorge Pena, Ph.D., also prepared a mental functional capacity assessment after review of the record. His findings were consistent with the earlier opinion of Dr. DeCubas. R. 125-30.

In February 2014, Mrs. Moreno prepared another teacher questionnaire. In the domain of acquiring and using information, Mrs. Moreno opined that that N.R.R. had a serious problem in the following activities: recalling and applying previously learned material; and applying problem-solving skills in class discussions. He had an obvious problem in the following activities: comprehending and doing math problems; providing organized oral explanations and adequate descriptions; expressing ideas in written form; and learning new material. She wrote, "Child needs extended time to complete tasks, and for oral response." R. 277-84.

In the domain of attending and completing tasks, Mrs. Moreno opined that N.R.R. had an obvious problem in carrying out multi-step instructions; changing from one activity to another without being disruptive; working without distracting self or others; and working at reasonable pace/finishing on time. Once again, Mrs. Moreno wrote that N.R.R. needed "extended time to complete tasks needed." R. 279.

8

In the domain of interacting and relating with others, Mrs. Moreno opined that N.R.R. had an obvious problem in using language appropriate to the situation and listener. She indicated that it had not been necessary to implement behavior modification strategies. R. 280.

In the domains of moving about and manipulating objects and caring for himself, Mrs. Moreno wrote that N.R.R. did not have obvious or more serious problems. R. 281-82.

Dr. McClure continued to treat N.R.R. in 2014. In March and April, N.R.R. was doing adequately. R. 387-88. In June 2014, his GAF score was 52, and the treatment note reflects that he was doing adequately. The diagnoses were ADHD and a mood disorder NOS. R. 381-86. Dr. McClure noted in July 2014 that N.R.R. continued to do well in school with fewer behavioral issues. R. 401. However, in September 2014, N.R.R. was markedly obsessive and emotionally labile. He also had some hyperactivity, impulsivity and restlessness. N.R.R. became emotionally upset during the interview. Dr. McClure's diagnoses were ADHD, mood disorder NOS and psychotic disorder NOS with a GAF score of 48. He continued to treat N.R.R. with medication. R. 398-99.

By February 2015, N.R.R. was against doing adequately. R. 418. On August 12, 2015, ARNP Lorraine Collins-Fox noted that N.R.R. was very easy to engage, and his insight and judgment were fair. He was not hyperactive, but he was very vociferous talking about his favorite games. N.R.R. was looking forward to going back to school. R. 412. He remained stable with less hyperactivity, impulsivity and restlessness in September 2015. R. 411.

School team meeting notes dated November 12, 2015, reflect that N.R.R. had difficulties staying seated and that he required multiple redirection to complete assignments. He was reading at grade level but he struggled to grasp math concepts when he needed to read them. He was below

9

grade level in math but he gained more confidence with new math skills and concepts and he had a math tutor. He struggled to complete even shortened assignments. R. 309.

Dr. McClure's treatment notes from late 2015 and 2016 reflect that N.R.R. was doing adequately. R. 422, 425.

## Analysis.

In the Joint Memorandum, which I have reviewed, counsel for N.R.R. raises two assignments of error. She contends that the ALJ erred by finding that N.R.R. had less than marked limitations in many domains of functioning as a result of his failure to state the weight given to the opinions of Dr. McClure. She also argues that the ALJ did not cite specific and adequate reasons to support his credibility finding. These are the only issues I will address.

### *Dr. McClure*.

Dr. McClure was a treating psychiatrist. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Counsel for N.R.R. correctly asserts that the ALJ did not state the weight given to Dr. McClure's opinions. However, counsel for the Commissioner persuasively argues that this error is harmless.

In his decision, the ALJ fully discussed the treatment notes of Dr. McClure. R. 48-49. The ALJ specifically addressed the GAF scores assigned by Dr. McClure. He gave them limited weight because GAF scores are only a snapshot of a person's functioning on a given day and are not endorsed by the SSA. R. 50-51. The ALJ also specifically cited information from Dr. McClure and Devereux's treatment notes to support his findings in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about

10

and manipulating objects. R. 52-56. This establishes that the ALJ appropriately considered Dr. McClure's opinions.

The ALJ also cited specific reasons for not giving controlling weight to Dr. McClure's opinions as follows:

> [T]he records from Orange County Public Schools showing progress with the 504 Plan (Exhibits B5E and B17E); objective findings during the consultative examination on September 29, 2013 (Exhibit B3F); Mrs. Morreno's questionnaires (Exhibits B1F and B12E); and opinions of the speech-language pathologist and State agency psychological consultants (Exhibits B1A, B3A, B6A and B15E); are more reflective of the claimant's actual level of functioning.

R. 51. These reasons are supported by substantial evidence in the record.

Finally, failure to state the weight given to particular medical opinions may be harmless when the opinions would not contradict the ALJ's ultimate determination. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. Jan. 7, 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).[3] In the Joint Memorandum, counsel for N.R.R. argues, "It would appear that the record of Dr. McClure and Devereux Mental Health would support a conclusion that the claimant has a marked limitation in at least one other domain." Doc. No. 17, at 20. This is pure speculation not supported by any legal authority showing that any specific findings by Dr. McClure establish that N.R.R. had a marked limitation in any domain other than attending and completing tasks.

Because the ALJ discussed Dr. McClure's findings and analyzed those findings in reaching his decision, I recommend that the Court find that failure to state the weight given to all of Dr. McClure's opinions is harmless.

---

[3] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

NOT FOR PUBLICATION

*Credibility.*

If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Counsel for N.R.R. argues that the ALJ failed to do this, instead relying on a boilerplate conclusion. However, careful review of the ALJ's decision shows that the ALJ complied with the *Foote* requirements.

The ALJ did use the following boilerplate language:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 47. Thereafter, the ALJ cited ample reasons to support this finding. These include that despite his attention deficits and hyperactivity, N.R.R. remained in regular classes and was alert and oriented with a euthymic mood. Medication helped calm him. R. 47. Dr. McClure noted that N.R.R. was doing adequately on his medication regime. R. 48. Mrs. Moreno noted that N.R.R. was gaining confidence with new math skills, and grasped information better when given orally. Ms. Quinones indicated that N.R.R. had made great growth. R. 50. Substantial evidence in the record supports each of these reasons.

Therefore, I recommend that the Court find that the second assignment of error is not well taken.

**Recommendation.**

Based on the foregoing reasons, I **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with this Order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**Respectfully recommended** in Orlando, Florida this 21st day of June 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE